UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AKOP BAGDASARYAN, <br><br> Petitioner, <br><br> v. <br><br> ICE FIELD OFFICE DIRECTOR, <br><br> Respondent. | Case No. C24-514-RSM-SKV <br><br> REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Petitioner Akop Bagdasaryan is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he challenges his ongoing detention by ICE.  Dkt. 6.  The Government has filed a return memorandum and motion to dismiss which is currently ripe for review.  Dkt. 8.  Petitioner has filed a response opposing the Government's motion to dismiss (Dkt. 11), and the Government has filed a reply brief in support of its motion (Dkt. 13).  The Court, having considered the parties' submissions and the governing law, concludes the Government's motion to dismiss should be granted, Petitioner's federal habeas petition should be denied, and this action should be dismissed.

REPORT AND RECOMMENDATION
PAGE - 1

## II. BACKGROUND

Petitioner was born in what is now the country of Armenia, and he was admitted to the United States in February 1981 as a RE6 refugee who thereafter adjusted to lawful permanent resident status. *See* Declaration of Michelle R. Lambert (Lambert Decl.), Dkt 10, Ex. B at 3. In February 1994, Petitioner was convicted of multiple felony counts in the Superior Court of California at Los Angeles, and he was sentenced to a term of confinement of five years plus life with the possibility of parole. *See id.*, Ex. B at 3, Ex. C at 2-3. Petitioner was released into ICE custody in April 2023, and he was transported to the NWIPC where he remains detained. *See* Dkt. 6 at 1; Declaration of George Chavez (Chavez Decl.), Dkt. 9, ¶ 5.

On April 5, 2023, Petitioner was served with a Notice to Appear ("NTA") charging him as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony relating to the demand for or receipt of ransom, and for having been convicted of an aggravated felony relating to a theft or burglary offense for which a term of imprisonment of at least one year was imposed. *See* Chavez Decl., ¶ 5; Lambert Decl., Ex. E at 4. Petitioner appeared before an immigration judge ("IJ") for removal proceedings on June 1, 2023, and he was ordered removed to Armenia on that date. Chavez Decl., ¶ 6; Lambert Decl., Ex. A. Petitioner waived his right to appeal the IJ's decision, and his removal order thus became administratively final on June 1, 2023. *See id.*

On July 17, 2023, Petitioner was issued a form I-229, Warning for Failure to Depart, and was provided an instruction sheet advising him of specific steps he was required to complete in order to comply with his obligation to assist in obtaining a travel document. Lambert Decl., Exs. G, H. Petitioner refused to sign those documents and he also refused to fill out and sign a travel document application. *See id.*; Chavez Decl., ¶ 7. Petitioner refused again to cooperate in

completing a travel document application on August 24, 2023.  *See* Lambert Decl., Ex. H; Chavez Decl., ¶ 8.  On September 13, 2023, Petitioner was served with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g).  Lambert Decl., Ex. H; Chavez Decl., ¶ 9.  Petitioner was advised therein that his custody status had been reviewed and it had been determined he would not be released from ICE custody.  Lambert Decl., Ex. H.  Petitioner was also advised that, in accordance with 8 U.S.C. § 1231(a)(1)(C), the removal period in his case had been extended because of his failure to comply with his obligation to make good faith efforts to obtain the travel documents necessary for his removal.  *See id*.

On November 21, 2023, Petitioner was again served with a form I-229 Warning for Failure to Depart, and was provided an instruction sheet advising him of the steps he was required to complete to comply with his obligation to assist in his removal.  Lambert Decl., Ex. I; Chavez Decl., ¶ 10.  Petitioner once again refused to sign those documents or to complete a travel document application.  *See id*.  On November 29, 2023, Petitioner was served with a second Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g).  Lambert Decl., Ex. I; Chavez Decl., ¶ 11.  Petitioner was advised therein that his custody status had been reviewed and it had been determined he would not be released from ICE custody.  Lambert Decl., Ex. I.  Petitioner was also once again advised that, in accordance with § 1231(a)(1)(C), the removal period in his case had been extended because of his failure to comply with his obligation to make good faith efforts to obtain the travel documents necessary for his removal.  *Id*.

On December 29, 2023, ICE personnel asked Petitioner if he would cooperate to complete his travel document application and he verbally confirmed that he would do so.  Chavez Decl., ¶ 12.  On January 5, 2024, Petitioner provided ICE personnel with information for a Travel Document Request ("TDR"), and the TDR was sent to the Armenian consulate in

|   |   |
|---|---|
| 1 | Glendale, California, on January 11, 2024.  Chavez Decl., ¶¶ 13, 14.  The TDR was mailed to the |
| 2 | Armenian consulate for a second time on April 24, 2024, to ensure it had been received because |
| 3 | ICE received no communication from the Armenian consulate after its original submission in |
| 4 | January 2024.  *Id*., ¶ 16.  According to ICE, the TDR currently remains pending.  *Id*., ¶ 17.  ICE |
| 5 | Deportation Officer George Chavez has submitted a declaration attesting that though no travel |
| 6 | document has yet been issued for Petitioner, Armenia "routinely" issues travel documents, and is |
| 7 | "accepting" individuals removed from the United States.  *See id.* |
| 8 | Petitioner initiated the instant action on April 15, 2024.  *See* Dkt. 1.  Petitioner alleges in |
| 9 | his petition that his continued detention beyond the 90-day removal period provided for in 8 |
| 10 | U.S.C. § 1231(a)(1)(A) violates his due process rights.  Dkt. 6 at 2.  Petitioner asserts that ICE is |
| 11 | not likely to procure a travel document for him in the reasonably foreseeable future "because the |
| 12 | country of removal is former USSR which is no longer a country."[1]  Petitioner requests that he |
| 13 | be released from detention.  *Id*.  The Government asserts that Petitioner is lawfully detained |
| 14 | pursuant to 8 U.S.C. § 1231, and that he is responsible for his prolonged detention because of his |
| 15 | failure to cooperate with ICE to effectuate his removal.  Dkt. 8.  The Government argues that |
| 16 | Petitioner has therefore failed to state a claim that his continued detention has become indefinite, |
| 17 | and it requests that the petition be dismissed.  *Id*.  Petitioner opposes the motion to dismiss.  Dkt. |
| 18 | 11.  The Government did not originally avail itself of the opportunity to submit a reply brief in |
| 19 | support of its motion to dismiss but complied with the Court's subsequent directive that it do so. |
| 20 | *See* Dkts. 12, 13. |

---

[1] Much of the argument presented by Petitioner in his petition is irrelevant to the issues before the Court in this action because Petitioner argues for release based on precedent related to pre-removal order statutes and Petitioner is confined pursuant to a post-removal order statute.  *See* Dkt. 6 at 3-6.

REPORT AND RECOMMENDATION
PAGE - 4

### III.   DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner who have been ordered removed.  Pursuant to § 1231(a), when a noncitizen is ordered removed, the Department of Homeland Security ("DHS") is to remove the alien from the United States within 90-days and is required to detain a noncitizen during that "removal period."  8 U.S.C. §§ 1231(a)(1)(A), (a)(2).  Here, because Petitioner's order of removal became administratively final on June 1, 2023, the removal period should have expired on August 30, 2023.  *See* 8 U.S.C. § 1231(a)(1)(B)(i).  However, because Petitioner refused to cooperate with ICE officials in obtaining his travel documents, the removal period was extended on two occasions in accordance with § 1231(a)(C).  *See* Lambert Decl., Exs. H, I.  In this instance, the removal period arguably extended to on or about April 4, 2024, 90-days after Petitioner cooperated in providing information for the TDR.  *See* Chavez Decl., ¶ 13.

After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are removable under § 1227(a)(2), or to release them on supervision.  8 U.S.C. § 1231(a)(6).  Because the IJ found Petitioner was removable under § 1227(a)(2), his current detention comports with § 1231(a)(6).

However, while § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely.  In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention.  *Zadvydas*, 533 U.S. at 701.  The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States.  *Id*.  "After this 6-month

period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*.

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Given the extension of the removal period in this case arising out of Petitioner's failure to comply with his obligation to assist ICE in obtaining travel documents, the presumptively reasonable six-month period expired on or about July 5, 2024, just over a month ago. Petitioner asserts that it is very unlikely he will be removed to Armenia in the reasonably foreseeable future because he is not a citizen of Armenia and, thus, he cannot be removed there. Dkt. 11 at 1-2. Petitioner explains that he immigrated from the U.S.S.R. to the United States in 1981, prior to Armenia becoming a sovereign nation, and he claims that it was only after Armenia gained independence in 1991 that it began recognizing its own citizens. *Id*. Petitioner maintains that he would have to have left Armenia after 1991 for that country to be able to issue a travel document for him. *Id*. at 2.

The Court first observes that though Petitioner asserts in this proceeding that he is not a native and citizen of Armenia, the Record of Deportable/Inadmissible Alien prepared by DHS in April 2023 in anticipation of Petitioner's release from the custody of the State of California

REPORT AND RECOMMENDATION
PAGE - 6

reflects that Petitioner was born in Yerevan, Armenia in 1955.  Lambert Decl., Ex. B at 1.  The same document reflects that Petitioner has "freely admitted" to ICE and Border Patrol officials in the past that he is a native and citizen of Armenia.  *See id.*, Ex. B at 3-4.

The Court further observes that, to the extent Petitioner contends his admission to the United States in 1981, prior to formation of the Republic of Armenia, will prevent Armenia from recognizing him as a citizen, his contention appears to be contrary to Armenian law.  The Government has directed the Court to a translated version of the Law of the Republic of Armenia which reflects that Armenia recognizes former citizens of "Armenian SSR" as citizens of the Republic of Armenia if they have not acquired citizenship of another country.  The Law of the Republic of Armenia, Art. 10, Par. 3, *non-official translation available at* http://parliament.am/legislation.php?sel=show&ID=1731&lang=eng (last visited Aug. 12, 2024).  Nothing in the record suggests that Petitioner has acquired citizenship of another country since his departure in 1981 from what was then the U.S.S.R.  Thus, there appears to be no reason why Armenia would not recognize Petitioner as a citizen and issue him a travel document in due course.

The Government avers that the Armenian consulate has not rejected Petitioner's travel document application, that his TDR is currently in pending status, and that Armenia routinely issues travel documents and is accepting individuals removed from the United States.  *See* Dkt. 9, ¶ 17; Dkt. 13 at 2.  It would have been quite helpful if the Government had provided more detailed information regarding any contacts ICE may have had with the Armenian consulate, how ICE was able to determine that Petitioner's TDR is currently in pending status, and the length of time it typically takes for the Armenian government to issue travel documents for its citizens, particularly for individuals like Petitioner who are former citizens of "Armenian SSR" and are, as the Government's paperwork indicates, in possession of only a USSR passport.  *See*

Lambert Decl., Ex. B at 5.  Nonetheless, the burden is on Petitioner to demonstrate in the first instance that there is no significant likelihood he will be removed in the reasonably foreseeable future, and he has not met that burden.

This Court concludes that though Petitioner has at this point been detained beyond the presumptively reasonable six-month period, it is significantly likely that Petitioner's removal will occur in the reasonably foreseeable future.  Accordingly, Petitioner is not entitled to habeas relief.

## IV.   CONCLUSION

Based on the foregoing, this Court recommends that the Government's motion to dismiss (Dkt. 8) be GRANTED, and that Petitioner's federal habeas petition (Dkt. 6) and this action be DISMISSED.  A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 4, 2024**.

DATED this 14th day of August, 2024.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8